IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWIN KEITH STEPHENS; and EDWIN KEITH STEPHENS LIVING TRUST,<br><br>    Plaintiffs,<br><br>  v.<br><br>WORLD SAVINGS BANK; CAL-WESTERN RECONVEYANCE CORP.; WELLS FARGO HOME MORTGAGE; and WACHOVIA MORTGAGE, FSB,<br><br>    Defendants.<br>_____/ | No. C 13-277 CW<br><br>ORDER DENYING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND FOR AN ORDER TO SHOW CAUSE REGARDING A PRELIMINARY INJUNCTION (Docket No. 16) |

In this foreclosure-related action, Plaintiffs Edwin Keith Stephens and Edwin Keith Stephens Living Trust apply ex parte for a temporary restraining order enjoining Defendants World Savings Bank, Cal-Western Reconveyance Corporation, Wells Fargo Home Mortgage and Wachovia Mortgage FSB from proceeding with a trustee's sale scheduled to take place on Monday, February 25, 2013 at 2:00 p.m. for the real property located at 999 Wisconsin Street, Apartment 4 in San Francisco, California (the property). Plaintiffs also seek an order requiring Defendants to show cause why a preliminary injunction should not be issued. For the reasons set forth below, the Court DENIES Plaintiffs' ex parte application for a temporary restraining order and DENIES without prejudice their request for an order to show cause why a preliminary injunction should not issue. Plaintiffs may file a properly noticed motion for a preliminary injunction, pursuant to Civil Local Rules 7-2 and 65-2.

BACKGROUND

The following facts are taken from the declaration of Edwin Keith Stephens submitted in support of the instant motion and executed on November 27, 2012 and the declaration for Michael Dolan submitted in support of the opposition filed by Defendants World Savings Bank, FSB, Wachovia Mortgage, FSB and Wells Fargo Bank, N.A.[1]

Mr. Stephens is the sole beneficiary of the Edwin Keith Stephens Living Trust. Stephens Decl. ¶ 3. In December 2004, he placed the property into the Trust. Id.

On or about January 18, 2007, he refinanced the property secured by a Deed of Trust in the amount of $353,000 naming World Savings Bank as the beneficiary and lender and Cal-Western Reconveyance Corporation as the trustee. Id. at ¶ 6. At that time, his monthly payment was an interest-only payment of about $1,600, which he believed then based on the direct representation of World Savings Bank to be a fixed amount that included payments to principal, interest, tax and insurance. Id. at ¶ 7.

On or around April 3, 2008, Mr. Stephens, on behalf of his Living Trust, obtained a $71,000 home equity line of credit secured by a Deed of Trust against his property. Dolan Decl. ¶ 5 & Ex. C. The Deed of Trust was recorded on April 10, 2008. Id.

At some point, World Savings Bank became Wachovia Mortgage FSB and Mr. Stephens began making payments to that entity.

---

[1] Wells Fargo Bank, N.A. represents that World Savings Bank, FSB changed its name to Wachovia Mortgage FSB and later merged with Wells Fargo Bank, N.A.

2

Stephens Decl. ¶ 11. At some unknown point, his loans were transferred to Wells Fargo Home Mortgage. Id. at ¶ 21.

In or around January 2010, Mr. Stephens's income fell dramatically. Id. at ¶¶ 12-13. In or around July of that year, he was unable to pay his "monthly obligations for the first time." Id. at ¶ 14.

On or about October 12, 2010, Mr. Stephens received the first Notice of Default based on the April 3, 2008 Deed of Trust. Id. at ¶ 15; Dolan Decl. ¶ 6, Ex. D. Mr. Stephens states, "In the 30 days prior to the date of the Notice of Default, I never received a single phone call, letter (certified or otherwise) or personal visits from any representative of any Defendant discussing my financial situation, outlining or explaining my alternatives to foreclosure, providing me with a telephone number for United States Department of Housing and [U]rban Development, or informing me of my right to a subsequent meeting with my lender within 14 days of such conversation." Id. at ¶ 16.

Between October 2010 and June 2011, Mr. Stephens "repeatedly contacted Wachovia in an attempt to procure a loan modification." Id. at ¶ 17. Mr. Stephens declares that his "inquiries went unanswered and at no time did Wachovia ever contact me to provide me with any options." Id. However, he also states that in or around July 2011, he "received correspondence in the mail from Wachovia concerning a loan modification" and that he "was assigned a representative by the name of Kodi Schafer who was my direct point of contact." Id. at ¶ 18. Mr. Shafer sent him "a loan modification application along with a list of supplemental

3

documents to submit so that I may be reviewed for a modification." Id. at ¶ 18.

In or about August 2011, Mr. Stephens received correspondence stating that he was denied a loan modification because he had insufficient income at the time that he applied. Id. at ¶ 20. Between 2010 and 2011, Wells Fargo reviewed several applications that he submitted and evaluated him for a loan modification under both the bank's internal "Mortgage Assistance Plan Version 2" and the federal Home Affordable Modification Program. Dolan Decl. ¶ 8. Wells Fargo found that he had insufficient income and excessive debt obligations. Id.

In or about April 2012, Mr. Stephens's monthly income increased. Stephens Decl. ¶ 22. The following month, he contacted a non-profit organization to assist him in procuring a loan modification. Id. He states, "Their assistance led to no avail as they failed to accurately complete my loan modification application and submit it along with required supplemental documents timely as required by Wells Fargo." Id. at ¶ 24.

On or about May 3, 2012, Mr. Stephens received from Wells Fargo a letter titled, "Notice of Intent to Foreclose." Id. at ¶ 24 & Ex. A; Dolan Decl. ¶ 9, Ex. F. This letter was regarding his first mortgage and stated that his delinquency at the time was $30,522.30. Dolan Decl. ¶ 9 & Ex. F.

On or about August 7, 2012, a Notice of Default was recorded against the property. Stephens Decl. ¶ 25. This second Notice of Default also related to the second Deed of Trust dated April 3, 2008. Dolan Decl. ¶ 10, Ex. G. At no point did Mr. Stephens receive an official copy of the Notice. Stephens Decl. ¶ 25. Mr.

4

Stephens states again, "In the 30 days prior to the date [of] the Notice of Default, I never received a single phone call, letter (certified or otherwise) or personal visits from any representative of any Defendant discussing my financial situation, outlining or explaining my alternatives to foreclosure, providing us with a telephone number for United States Department of Housing and Urban Development, or informing us of my right to a subsequent meeting with my lender within 14 days of such conversation." Id. at ¶ 26 (errors in original).

On November 14, 2012, Mr. Stephens received a Notice of Trustee's Sale. Id. at ¶ 27. The notice stated that the trustee's sale had been scheduled for December 4, 2012. Id. at ¶ 27, Ex. 2. The notice references the second Deed of Trust, which was recorded on April 10, 2008. Dolan Decl. ¶ 11, Ex. H.

On November 29, 2012, Plaintiffs filed the instant action in the Superior Court of California in the County of San Francisco. NOR, Ex. 1 (Compl.). They asserted eight claims against Defendants: (1) violation of California Civil Code section 2923.5; (2) wrongful foreclosure in violation of California Civil Code sections 2924, et seq.; (3) negligent misrepresentation; (4) negligence; (5) breach of contract; (6) fraud; (7) violation of California's Unfair Competition Law; and (8) cancellation of instrument regarding the notice of default and notice of sale.

On January 18, 2013, World Savings Bank, Wells Fargo Home Mortgage and Wachovia Mortgage FSB removed this action to federal court. At that time, these Defendants represented that the state court docket did not contain any filed proof of service of process on any Defendant and that counsel for Cal-Western Reconveyance

5

Corporation had confirmed to them that it had not received service of process.  Plaintiffs also have not filed any proof of service upon Cal-Western Reconveyance Corporation in the docket of this action.

On February 1, 2013, Wells Fargo Bank, N.A., successor by merger with Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Mortgage, FSB and World Savings Bank, FSB, erroneously sued separately as World Savings Bank, Wachovia Mortgage FSB and Wells Fargo Home Mortgage, moved to dismiss the claims against these three Defendants.  Docket No. 5.  Pursuant to Civil Local Rule 7-3, Plaintiffs' response to the motion to dismiss was due by February 15, 2013.  However, as of the date of this Order, Plaintiffs have not filed any opposition to the motion to dismiss.

On Thursday, February 21, 2013, Plaintiffs submitted an ex parte application for a temporary restraining order, seeking to enjoin a trustee's sale of the property that is scheduled to take place on Monday, February 25, 2013.  Plaintiffs and their counsel do not state when they learned that the trustee's sale was scheduled for that date.

As of February 21, 2013, Plaintiffs were twenty-six months behind on the first mortgage, with an arrearage of $47,638.89, and twenty-five months behind on the second mortgage, with an arrearage of $4,821.39.  Dolan Decl. ¶¶ 11, 12 & Exs. I & J.

On Friday, February 22, 2013, Defendants World Savings Bank, FSB, Wachovia Mortgage, FSB and Wells Fargo Bank, N.A. filed an opposition to the ex parte application.

LEGAL STANDARD

Under Federal Rule of Civil Procedure 65, a temporary restraining order may be issued without providing the opposing party an opportunity to be heard only if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). Further, the moving party's attorney must certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). "The stringent restrictions imposed" by Rule 65 "on the availability of ex parte temporary restraining orders reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and opportunity to be heard has been granted to both sides of a dispute." Granny Goose Foods v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 439 (1974).

"The standard for issuance of a temporary restraining order is the same as that for issuance of a preliminary injunction." Burgess v. Forbes, 2009 WL 416843, at *2 (N.D. Cal.). To obtain a preliminary injunction, the moving party must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 129 S. Ct. 365, 374 (2008). Alternatively, preliminary injunctive relief could be granted when "the likelihood of success is such that serious questions going to the merits were raised and

7

the balance of hardships tips sharply in plaintiff's favor," so long as the plaintiff demonstrates a likelihood of irreparable harm and shows that the injunction is in the public interest. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011) (citation and internal quotation and editing marks omitted). In the Ninth Circuit, courts employ a "sliding scale" approach, under which "a stronger showing of one element may offset a weaker showing of another." Id. For instance, "a stronger showing of irreparable harm to plaintiff might offset a lesser showing of likelihood of success on the merits." Id.

DISCUSSION

Plaintiffs' filing raises serious questions as to whether notice was provided to Cal-Western Reconveyance Corporation, the sole remaining Defendant. At the time of removal, this Defendant had not yet been served with process. Since then, Plaintiffs have not filed any proof of such service in the docket of this action and no attorney has appeared on behalf of this Defendant. Thus, Cal-Western Reconveyance Corporation would not have received notice of the motion through the Electronic Case Filing system. Plaintiffs have also not filed proof of service of this motion by mail to Cal-Western Reconveyance Corporation. In his declaration in support of the instant motion, Plaintiffs' counsel, Ravi Sakthivel, represents generally that he "contacted defendants' counsels on February 20, 2013 and notified them" that this motion would be made the following day. Sakthivel Decl., Docket No. 16-1, ¶ 2. However, he further specifies that he "notified the following individuals of this application on February 21, 2013: Defendant Wells Fargo Home Mortgage, Wells Fargo Bank, N.A., World

8

Savings Bank, Wachovia Mortgage FSB: <u>Michael Rapkine</u> Anglin Flewelling Rasmussen Campbell & Trytten LLP . . ." <u>Id.</u> (emphasis in bold in original). Mr. Sakthivel, however, does not identify any counsel for Cal-Western Reconveyance Corporation to whom he provided notice. The Court declines to assume that Cal-Western Reconveyance Corporation is on notice of this motion. Accordingly, the requirements of Rule 65(b) regarding the issuance of temporary restraining orders without notice apply. Mr. Sakthivel has not complied with those requirements in his declaration because he fails to provide any reason why notice to Cal-Western Reconveyance Corporation should not be required or to explain what efforts he has made to contact its counsel.

In addition to failing to comply with the procedural requirements for an ex parte temporary restraining order, Plaintiffs' motion also fails on the merits. Although Plaintiffs argue in their application that they would suffer irreparable harm in losing their home, they have failed to establish that the balance of equities tips in their favor or that an injunction is in the public interest. Plaintiffs' arguments on these points in their brief are not supported by evidence and are utterly disconnected from the facts presented and allegations made in this case. Plaintiffs argue that the balance of equities tips in their favor because "they are elders and/or seniors under any legal definition relevant hereto," and that an injunction is in the public interest because "Defendants (i) gave senior citizens a predatory loan, (ii) committed fraud on senior citizens, (iii) intentionally inflicted emotional distress on senior citizens, (iv) engaged in unfair competition in their dealings

9

with senior citizens, and (v) abused senior citizens financially." TRO Appl. 9-10.  However, Plaintiffs have offered no testimony or evidence that Mr. Stephens is elderly and have made no allegation in their complaint that he is elderly or that he was targeted as a result of his age.  They further contend that the equities favor them because Defendants calculated an excessively high new monthly payment after loan modification and threatened and bullied Plaintiffs into accepting a "skewed modification." Id. at 9.  However, there is no evidence or allegation that Plaintiffs modified their loan.  In fact, a number of Plaintiffs' claims are premised on the allegation that Mr. Stephens was unable to obtain any loan modification.

In addition, although Plaintiffs have had notice of the foreclosure sale since November 2012, they waited to seek relief from the Court until only days before the sale was to take place. See, e.g., Lydo Enters. v. Las Vegas, 745 F.2d 1211 (9th Cir. 1984) (noting that a "preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights" and that by "sleeping on its rights a plaintiff demonstrates the lack of need for speedy action") (citations omitted).  Although Mr. Sakthivel states that Plaintiffs will suffer irreparable harm before Defendants can be heard in opposition because in the absence of a temporary restraining order the Trustee's Sale will take place before such time, it appears that this prospect is the result of Plaintiffs' delay in filing this motion.  Plaintiffs have waited until the Thursday before a Monday trustee's sale to seek a restraining order, when it would be difficult or impossible to allow

10

1  Defendants to have an opportunity to be heard in response prior to
2  the date of the sale, and they have offered no reason to explain
3  this delay.  With his declaration, counsel has submitted a report
4  from a website called "Foreclosure Radar" that states that the
5  trustee's sale is scheduled for February 25, 2013 and that it had
6  previously been scheduled for December 4, 2012 and January 25,
7  2013.  Sakthivel Decl. ¶ 3, Ex. 1.  Although counsel does not
8  state when Plaintiffs learned that the sale was set for February
9  25, 2013, because that the sale was previously set for January 25,
10 2013 and Plaintiffs acknowledge that Mr. Stephens had received the
11 Notice of the Trustee's Sale in November 2012, it appears that
12 they had sufficient advance notice of the sale so as to permit
13 them file this motion at an earlier date.  Indeed, Mr. Stephens
14 appears to have executed his declaration supporting this
15 application almost three months ago.
16     Plaintiffs have also failed to establish a likelihood of
17 success or serious questions going to the merits of their claims.
18 As an initial matter, Plaintiffs have failed to file any
19 opposition to the pending motion to dismiss their complaint in its
20 entirety and do not address the arguments made therein in the
21 instant motion.  Thus, they have not challenged Defendants'
22 arguments, for example, that their claims cannot be maintained
23 without tender of their indebtedness or that the Home Owners' Loan
24 Act (HOLA) preempts all of their claims, including those premised
25 on California Civil Code sections 2923.5 and 2924.  Having failed
26 to challenge those arguments, Plaintiffs have not shown that they
27 are likely to succeed on the merits of any of their claims.
28

In the instant application, Plaintiffs base their arguments on the likelihood of success on the merits on the recent enactment of certain new statutes governing the non-judicial foreclosure process in California. TRO Appl. at 5-8. In particular, Plaintiffs contend that they are likely to be able to show that California Civil Code sections 2924.12(a) and 2924.19(a), which went into effect on January 1, 2013, should be applied in this action. These sections provide, "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of" California Civil Code sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.17 or 2924.18. Cal. Civ. Code §§ 2924.12(a)(1), 2924.19(a)(1). They further provide, "Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgage, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief." Cal. Civ. Code §§ 2924.12(a)(2), 2924.19(a)(2).

Plaintiffs make a number of arguments seeming to assume that an injunction has already issued and that Defendants must show that the violations have been remedied, in order to have the injunction lifted. However, no injunction has been issued, and Plaintiffs themselves have the burden to establish that an injunction should be granted in the first place. For example, Plaintiffs state, "Once the enjoined party, Defendants, have demonstrated that they have complied with the statute, they may move to dissolve the injunction. However, Defendants have failed

12

to meet their burden and the injunction should stand." TRO Appl. 9; see also id. at 8 (arguing that Defendants "have the burden of proof to demonstrate compliance with the new statute before the injunction can be lifted" and that they have failed "to meet there [sic] burden of providing competent and reliable evidence concerning their compliance"). Because no injunction has been entered, Plaintiffs' arguments about the application of sections 2924.12(a)(2) and 2924.19(a)(2) are off-point, regardless of whether these newly-enacted code sections could apply to this action.

Further, the specific code sections that Plaintiffs contend in this application that Defendants violated--the new California Civil Code sections 2923.5, 2923.55 and 2923.6--do not apply to the second deed of trust at issue here. California Civil Code section 2924.15(a) provides that these codes section "shall apply only to first lien mortgages or deeds of trust . . ." Cal. Civil Code § 2924.15(a). The notices of default and sale at issue here were related to the second deed of trust, not the first. Further, although Plaintiffs refer generally to violations of California Civil Code sections 2923.55 and 2923.6(a), (b) and (h) in their ex parte application, they have not charged Defendants with violating those in their complaint.

In addition, Plaintiffs have not established a prima facie case that Defendants violated the former California Civil Code section 2923.5. That code section provides that a lender may not file a notice of default until thirty days after it has contacted the borrower by telephone or in person to assess the borrower's financial situation and explore options for the borrower to avoid

13

United States District Court
For the Northern District of California

foreclosure. Although Mr. Stephens states in his declaration that Defendants did not contact him in person or by telephone within the thirty days immediately prior to the recording of the notices of default, he does not state whether they contacted him before that time. See Stephens Decl. ¶¶ 16, 26. In addition, elsewhere in his declaration, Mr. Stephens makes clear that he did have some communications with Defendants' representative, Kodi Schafer, about alternatives to foreclosure more than thirty days before the second notice of default was recorded. Id. at ¶ 18. Further, even if Plaintiffs had submitted prima facie evidence that the procedures were violated, the former version of section 2923.5 applied only to "mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007, inclusive." Cal. Civil Code § 2923.5(i) (2010). The second deed of trust, which was the subject of the notice of default here, was not recorded during that time period. Finally, the Court declines to consider the merits of additional potential claims made in the complaint that were not addressed in Plaintiffs' instant application.

## CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiffs' ex parte application for a temporary restraining order and DENIES without prejudice their request for an order to show cause why a preliminary injunction should not issue (Docket No. 16). Plaintiffs may file a properly noticed motion for a preliminary injunction, pursuant to Civil Local Rules 7-2 and 65-2. If Plaintiffs do so, they shall serve Cal-Western Reconveyance Corporation with the complaint as well as the motion for a preliminary injunction. The Court notes that, if the Trustee's

14

1  Sale takes place as scheduled, a motion for a preliminary
2  injunction may be moot.
3        IT IS SO ORDERED.

5  Dated: 2/22/2013
                                    CLAUDIA WILKEN
                                    United States District Judge